**Patrick Charles McKENNA, Petitioner–Appellee–Cross–Appellant,**

v.

**Ed K. McDANIEL,\* Warden of the State of Nevada, Respondent–Appellant–Cross–Appellee.**

Nos. 93–99001, 93–99002.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1994.

Submission Withdrawn July 20, 1994.

Resubmitted Nov. 1, 1994.

Decided Sept. 15, 1995.

---

\* Ed K. McDaniel, who succeeded Salvadore Godinez as Warden of the Ely, Nevada State Prison, is substituted as respondent in this case. Fed. R.App.P. 43(c)(1).

David F. Sarnowski, Chief Deputy Attorney General, Carson City, NV, for respondent-appellant-cross-appellee.

John J. Graves, Graves & Leavitt, Las Vegas, NV; Cal J. Potter, III, Potter Law Offices, Las Vegas, NV, for petitioner-appellee-cross-appellant.

Michael Pescetta, Nevada Appellate and Postconviction Project, Las Vegas, NV, for amicus curiae.

Before: HUG, CYNTHIA HOLCOMB HALL, and TROTT, Circuit Judges.

HUG, Circuit Judge:

Petitioner, Patrick Charles McKenna, filed a petition for a writ of habeas corpus contesting the validity of his conviction for first-degree murder, a crime for which he was sentenced to death. The district court upheld the conviction but held that the jury

instruction regarding depravity of mind was unconstitutionally vague as given to the jury and, therefore, was an impermissible aggravating circumstance upon which to base a sentence of death. The State appealed the ruling on the sentence and McKenna cross-appealed, claiming constitutional errors relating to both his conviction and sentence. We affirm the district court's decision denying relief from the conviction but granting relief concerning the death sentence. We remand for the district court to enter an order granting the writ of habeas corpus with regard to the death sentence unless the State resentences McKenna within a reasonable period of time.

## FACTS AND PROCEDURAL HISTORY

McKenna was imprisoned after conviction for rape at age 17 in 1964. In 1976, McKenna was paroled. Less than two years later, he was arrested for the rape and robbery of two women. McKenna was later charged and convicted of one count of robbery, two counts of second-degree kidnapping and using a weapon to commit the crimes, and three counts of sexual assault. *See McKenna v. State of Nevada*, 101 Nev. 338, 705 P.2d 614, 622 (1985), *cert. denied, McKenna v. Nevada*, 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986). After the court announced the verdict, McKenna returned to his cell. The next morning another inmate, Jack Nobles, was found dead in cell 4A2. The cause of death was ligature strangulation.

Evidence was produced at trial that McKenna, Nobles, and two other inmates, David Denson and David Rossi, were locked down in cell 4A2 together that night. Rossi testified that while he was sleeping in the bottom bunk with Nobles in the top, he awoke and observed McKenna coming toward the bunk. He then heard McKenna and Nobles arguing in whispers. McKenna stood on the toilet at the bottom of Rossi's bunk, positioning himself over Nobles. Rossi stated that he heard grunting and wheezing and felt vibrations "like feet kicking." McKenna then partly pulled Nobles off the top bunk. Rossi observed blood running down McKenna's arm, which was wrapped around Nobles's neck. Rossi testified that McKenna turned Nobles loose three-to-five minutes later, placed him back in his bunk, and covered him with a blanket.

The testimony of another inmate, Michael Dennis Jones, who was in the cell directly across from cell 4A2 that night, was read into the record.[1] Jones's testimony stated that he saw McKenna and Nobles arguing and then saw McKenna choking him. Nobles's knees buckled and he dropped to the ground. Rossi helped McKenna place Nobles back in the top bunk.

Denson stated that the next morning, before leaving for breakfast and before Nobles's body was found, McKenna asked him to pass a homemade knife, the handle of which was wrapped with fabric ligature, to another inmate, Seebon Harris, who was in another cell. Harris testified that he did receive the knife from McKenna but, after learning Nobles had been murdered, handed it over to a guard. Harris further testified that during the day of January 5, McKenna was very upset and had struck another inmate without provocation. Harris had spoken with Nobles that day and testified that Nobles was upset and crying and believed McKenna was mad at him. Nobles stated, "Why don't them damn guys just leave me alone."

McKenna was charged, tried, and convicted for the murder of Jack Nobles. The Nevada Supreme Court overturned his initial conviction, however, because the trial court improperly allowed McKenna's psychiatrist to relate admissions made by McKenna. In August, 1982, McKenna was retried. At McKenna's request, the court appointed his brother, Ken McKenna, an attorney who had graduated from law school a year and a half prior to the appointment, as McKenna's counsel along with another attorney, Kent Robison. Robison withdrew from the case two days after trial started and sent Bruce Beesley, another attorney from his office, to replace him.

The jury again convicted McKenna of murder. The jury found two aggravating fac-

---

1. After giving his deposition testimony and be- fore McKenna's trial, Jones committed suicide.

tors: 1) McKenna was previously convicted of felonies involving the use or threat of violence; and 2) the crime involved depravity of mind. The jury returned a form stating that it found no mitigating factors sufficient to outweigh the aggravating factors, and sentenced Mckenna to death. The Nevada Supreme Court affirmed McKenna's conviction and sentence on direct appeal. *See McKenna v. State,* 101 Nev. 338, 705 P.2d 614 (1985). The United States Supreme Court denied McKenna's petition for writ of certiorari. 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986).

McKenna then sought post-conviction relief in state court. The district court for the district of Clark County denied relief and McKenna appealed to the Nevada Supreme Court, which vacated McKenna's sentence with instructions to reconsider McKenna's petition. In February 1988, the trial court held an evidentiary hearing and again denied McKenna relief. The Nevada Supreme Court affirmed that decision and, later, denied McKenna's petition for rehearing. The United States Supreme Court again denied McKenna's petition for writ of certiorari. *See McKenna v. Nevada,* 498 U.S. 925, 111 S.Ct. 306, 112 L.Ed.2d 260 (1990).

In November 1990, McKenna filed a petition seeking a writ of habeas corpus in the Federal District Court for the District of Nevada. On February 20, 1992, the district court overturned McKenna's death sentence, holding that the depravity of mind instruction, which allowed the jury to find depravity of mind as an aggravating circumstance, was unconstitutionally vague. The district court vacated McKenna's sentence, but upheld his convictions. On appeal, we held it was unclear whether the district court had considered all of McKenna's claims for habeas relief, and we remanded for that purpose. The district court clarified its ruling, entering a new order vacating the death sentence on the ground that the depravity of mind instruction was unconstitutionally vague, but denying all of McKenna's other claims for habeas relief. The State of Nevada now appeals, and McKenna cross-appeals.

The appeals were timely, and we granted a certificate of probable cause. We have jurisdiction pursuant to 28 U.S.C. § 2253.

## DISCUSSION

On appeal, the State of Nevada contends first that the district court erred in reaching the constitutionality of the depravity of mind instruction because McKenna had procedurally defaulted on that claim in the state court; and second, that because there remains one finding of a valid aggravating factor and no mitigating factors, no reweighing is required. McKenna cross-appeals, arguing that the district court improperly denied his other claims for habeas relief, contending that there were constitutional errors in both the guilt phase and the penalty phase of his trial.

### I. *Depravity of Mind Instruction*

### A. *Procedural Default*

At the penalty phase of McKenna's trial, the jury, in a special verdict, found two aggravating circumstances: 1) the murder was committed by a person who was previously convicted of another felony or felonies involving the use or threat of violence to the person of another; and 2) the murder was committed with depravity of mind. The verdict form further read: "We the Jury, state that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances stated." The jury left blank and unsigned a special verdict form that asked them to "designate that the mitigating circumstance or circumstances which have been checked below outweigh any aggravating circumstance or circumstances."

The following instruction was given to the jury on the depravity of mind aggravating circumstance:

You are instructed that an aggravating circumstance of murder in the first degree is where the murder involved depravity of mind.

The condition of mind described as depravity of mind is characterized by an inherent deficiency of moral sense and integrity. It consists of evil, corrupt and perverted intent which is devoid of regard

for human dignity and which is indifferent to human life. It is a state of mind outrageously horrible or inhuman.

■ The district court found this instruction to be unconstitutionally vague and granted McKenna's petition as to the death sentence. The State of Nevada now argues that the district court's decision to reach the merits of this issue was error because McKenna procedurally defaulted on this claim in state court.

McKenna's counsel did not object to the depravity of mind instruction at trial, and the issue was not raised on McKenna's direct appeal. McKenna's first challenge to the constitutionality of the depravity of mind instruction came in McKenna's state petition for post-conviction relief. In addressing the issue for the first time, the Nevada Supreme Court stated:

Appellant next contends the district court erred in rejecting his claim that the jury instruction concerning the aggravating circumstance of depravity of mind violated the eighth and fourteenth amendments of the United States Constitution. Specifically, appellant contends that the trial court failed to properly define depravity of mind for the jury. However, appellant waived this issue by failing to raise it on direct appeal. See NRS 177.375; Craig v. Warden, 87 Nev. [39] at 40, 482 P.2d [325] at 325–26.

Moreover, the contention has no merit. The jury instruction in question is virtually identical to that approved by this court in Rogers v. State, 101 Nev. 457, 705 P.2d 664 (1985), cert. denied, 476 U.S. 1130 [106 S.Ct. 1999, 90 L.Ed.2d 679] (1986). Finally, we held in appellant's direct appeal that "[t]he circumstances surrounding the murder by ligature strangulation support the jury's finding that the murder involved depravity of mind." McKenna, 101 Nev. at 351, 705 P.2d at 622–23. Therefore, any error concerning the jury instruction was harmless and the court below correctly concluded that this contention did not constitute proper grounds for post conviction relief. See NRS 178.598.

■ The State contends that this ruling constitutes a plain statement of procedural default based on independent and adequate state grounds, which precludes federal habeas jurisdiction. In a habeas corpus proceeding, a federal court generally "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 727–31, 111 S.Ct. 2546, 2553–54, 115 L.Ed.2d 640 (1991). This doctrine applies to bar federal habeas review when the state court has declined to address the petitioner's federal claims because he failed to meet state procedural requirements. Id. at 729–31, 111 S.Ct. at 2554; see also Sochor v. Florida, 504 U.S. 527, 532–34, 112 S.Ct. 2114, 2119–20, 119 L.Ed.2d 326, 337 (1992). Thus, the independent state grounds doctrine bars the federal courts from reconsidering the issue in the context of habeas corpus review as long as the state court explicitly invokes a state procedural bar rule as a separate basis for its decision. Harris v. Reed, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 1044 n. 10, 103 L.Ed.2d 308 (1989).

In the present case, it would appear at first blush as if the Nevada Supreme Court made a plain statement that McKenna's challenge to the depravity of mind instruction was procedurally waived because he failed to raise the issue on direct appeal. After noting the possibility of procedural default, however, the court went on to specifically reach the merits of the federal claim. This analysis was necessary to the court's holding because in Nevada failure to raise constitutional claims on direct appeal does not necessarily bar consideration of those claims on collateral review. See Pertgen v. Nevada, 110 Nev. 554, 875 P.2d 361, 364 (1994). In Pertgen, the Nevada Supreme Court stated:

Moreover, the power of this court to address plain error or issues of constitutional dimension sua sponte is well established. Because this case involves the ultimate punishment and because appellant's claims of ineffective assistance of counsel are directly related to the merits of his claims, we will consider appellant's claims on the merits.

*Id.* (citations omitted). Thus, the court's refusal to entertain McKenna's complaints on collateral review, at best, represents a refusal to exercise discretion to hear the claim. This is insufficient for the State to invoke the procedural bar doctrine. *See Russell v. Rolfs,* 893 F.2d 1033, 1035–36 (9th Cir.1990) ("It is significant in our interpretation that the Washington Supreme Court decided not to exercise its discretionary power—as contrasted with refusing to hear Russell's case because of a procedural bar"). The Nevada Supreme Court's statement that McKenna had waived this claim is, thus, necessarily intertwined with its analysis of the merits of McKenna's constitutional claims and does not constitute a clear statement of independent and adequate state grounds for the decision. *Coleman,* 501 U.S. at 734–36, 111 S.Ct. at 2557. We conclude, therefore, that the district court was not procedurally barred from examining the merits of McKenna's claims on federal habeas corpus review.

B. *Requirement to Reweigh*

■ Nevada is a "weighing" state, *i.e.,* a state where "the ultimate sentencing decision turns on weighing the statutory aggravating factors against the mitigating evidence." *Jeffers v. Lewis,* 5 F.3d 1199, 1203 (9th Cir. 1992), *rev'd on other grounds,* 38 F.3d 411 (9th Cir.1994) (en banc). In a weighing state where the aggravating and mitigating factors are balanced against each other, it is constitutional error for the sentencer to give weight to an unconstitutionally vague aggravating factor, even if other valid aggravating factors remain. *Stringer v. Black,* 503 U.S. 222, 229–32, 112 S.Ct. 1130, 1136–37, 117 L.Ed.2d 367 (1992).

■ In the present case, the depravity of mind instruction was nearly identical to other instructions that this and other courts have found to be unconstitutionally vague. *See, e.g., Godfrey v. Georgia,* 446 U.S. 420, 428, 433, 100 S.Ct. 1759, 1764–65, 1767, 64 L.Ed.2d 398 (1980); *Deutscher v. Whitley,* 946 F.2d 1443, 1447 (9th Cir.1991), *vacated on other grounds,* — U.S. ——, 113 S.Ct. 367, 121 L.Ed.2d 279 (1992); *Jimenez v. State,* 106 Nev. 769, 801 P.2d 1366, 1369 (1990); *Robins v. State,* 106 Nev. 611, 798 P.2d 558 (1990), *cert. denied,* 499 U.S. 970, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991); *Moran v. State,* 103 Nev. 138, 734 P.2d 712, 714 (1987), *rev'd., Godinez v. Moran,* — U.S. ——, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); *Rogers v. State,* 101 Nev. 457, 705 P.2d 664, 671 (1985), *cert. denied,* 476 U.S. 1130, 106 S.Ct. 1999, 90 L.Ed.2d 679 (1986) (demonstrating Nevada's recognition and application of *Godfrey* principals one week after McKenna's direct appeal and before his collateral appeals).

■ In McKenna's case, the trial court failed to provide the required limiting instruction that would "distinguish the few cases in which [the death penalty] is imposed from the many cases in which it is not." *Godfrey,* 446 U.S. at 427, 100 S.Ct. at 1764. Thus, the jury's discretion was unchannelled by clear and objective standards providing specific, detailed guidance that makes rationally reviewable the process for imposing a sentence of death. *Id.* at 428, 100 S.Ct. at 1764–65. Nevertheless, the State argues that remand is unnecessary because another aggravating factor exists, and the jury specifically found no mitigating factors. We disagree.

The Supreme Court has held that invalidation of an aggravating circumstance does not automatically require the reviewing court to vacate a death sentence and remand for a new sentencing proceeding before a jury. Where at least one other aggravating factor exists, the state high court, instead, may either reweigh or conduct a harmless error analysis. *Clemons v. Mississippi,* 494 U.S. 738, 748–49, 110 S.Ct. 1441, 1448–49, 108 L.Ed.2d 725 (1990); *see also Jeffers,* 38 F.3d at 414.

■ Even in a weighing state, however, invalidation of one of several aggravating factors may make no difference if there were no mitigating circumstances against which the state court could balance the remaining aggravating factors. *See Neuschafer v. Whitley,* 816 F.2d 1390, 1393 (9th Cir.1987). But where some mitigating factors exist, there must either be a new sentencing hearing before a jury or the state appellate court must reweigh or conduct harmless error review in order to give the defendant the indi-

vidualized consideration required by the Constitution. *Clemons*, 494 U.S. at 746, 752, 110 S.Ct. at 1447, 1450.

In its published decision on McKenna's direct appeal, the Nevada Supreme Court stated "[t]he jury further found there were no mitigating circumstances." *McKenna*, 705 P.2d at 622. The district court held that the record does not support the Nevada Supreme Court's conclusion. We agree. The special verdict form returned by the jury stated that there were no mitigating circumstances sufficient to outweigh the aggravating factors. This is insufficient to conclude that the jury found no mitigating circumstances. Rather, the form indicates only that the mitigating evidence was insufficient to outweigh the two aggravating factors. The record demonstrates that McKenna did provide some mitigating evidence, including his difficult childhood, his argument that he was a product of the penal system and his value to society as a writer. Because we have found one of the aggravating factors to be unconstitutional, the question now becomes whether the mitigating evidence is sufficient to outweigh the sole remaining aggravating factor. Thus, under *Clemons*, McKenna must be resentenced in a proceeding where the remaining valid aggravating factor found by the jury is weighed against the mitigating evidence. 494 U.S. at 741, 110 S.Ct. at 1444; *Richmond v. Lewis*, 506 U.S. 40, ——, 113 S.Ct. 528, 535, 121 L.Ed.2d 411 (1992); *Jeffers*, 38 F.3d at 414.

The parties have suggested that this case be certified to the Nevada Supreme Court to resolve the question of the appropriate procedure for resentencing and how this procedure should be accomplished under Nevada law. We conclude that this is a question of Nevada law best resolved by the Nevada state courts in the context of a Nevada criminal case, rather than by a certification process in the context of a federal habeas corpus proceeding. Therefore, we express no opinion on the proper procedure Nevada should employ when resentencing McKenna.

## II. *McKenna's Other Claims for Relief*

In his cross-appeal, McKenna challenges the district court's denial of his other grounds for habeas corpus relief. Specifically, McKenna contends the district court erred by denying relief for: 1) the trial court's refusal to admit McKenna's autobiography as mitigating evidence in the penalty phase of his trial; 2) his claims of prosecutorial misconduct; 3) the trial court's denial of McKenna's motion for a new trial based on new evidence; and 4) his claims of ineffective assistance of counsel at trial and on direct appeal.

■■■ We review *de novo* the decision to grant or deny a petition for writ of habeas corpus. *Thomas v. Brewer*, 923 F.2d 1361, 1364 (9th Cir.1991). State court findings of fact are entitled to deference under 28 U.S.C. § 2254(d), and we review the federal district court's findings of fact for clear error. *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). Because ineffective assistance of counsel claims are mixed questions of law and fact, we review them *de novo*. *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir.1986). In reviewing claims of trial error on habeas review, we must determine whether the alleged errors had "substantial and injurious affect or influence" on the jury's verdict. *Brecht v. Abrahamson*, —— U.S. ——, —— – ——, ——, 113 S.Ct. 1710, 1716–17, 1721, 123 L.Ed.2d 353, 367, 373 (1993). Habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice. *O'Neal v. McAninch*, —— U.S. ——, —— – ——, 115 S.Ct. 992, 994–95, 130 L.Ed.2d 947 (1995). It is the responsibility of the court, once it concludes there was error, to determine whether the error affected the judgment. If the court is left in grave doubt, the conviction cannot stand. *Id.*

## A. *McKenna's Autobiography*

■■■ At the penalty phase of his trial, McKenna sought to reopen his case and introduce the first six chapters of his autobiography as mitigating evidence. Although we hold that McKenna's sentence of death cannot be upheld unless it is done in a resentencing proceeding that eliminates consideration of the invalid aggravating factor, this issue remains pertinent in the event the Ne-

vada Supreme Court engages in a reweighing process.

McKenna claimed the autobiography would show: 1) his difficult childhood; 2) his negative experiences with juvenile corrections authorities; and 3) his ability to contribute to society as a writer. The trial court refused to admit the biography. On direct appeal, the Nevada Supreme Court affirmed the trial court's decision. *McKenna*, 705 P.2d at 620–21. McKenna asserts that these decisions violated his Eighth Amendment right to individualized sentencing.

■ The Supreme court stated in *Eddings v. Oklahoma*, 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982) that in considering the death penalty, " 'the sentencer [may] not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.' " (quoting *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978) (emphasis in original)). Although a defendant is entitled to present this substantive evidence, this does not entitle the defendant to present it through any means he chooses. McKenna was certainly entitled to present evidence of his difficult childhood, his negative experiences with juvenile authorities, and his writing ability through his own testimony and that of other witnesses. This does not mean it was constitutional error not to allow him to do so through his own written autobiography. McKenna did not choose to testify as to these facts, although he was not precluded from doing so. Other witnesses appearing on his behalf testified as to the substance of the facts contained in the autobiography, and the State conceded his writing ability. The autobiography, itself, would have been cumulative. Its exclusion from the hearing was not constitutional error and was not prejudicial.

## B. *Prosecutorial Misconduct*

McKenna asserts two grounds of prosecutorial misconduct. The first relates to the guilt phase of the trial; the second relates to the penalty phase.

### 1. *Guilt Phase*

■ McKenna contends that the prosecution violated *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), by commenting on McKenna's silence after he was arrested and given his *Miranda* warning. The factual basis for the argument is the testimony elicited from Detective Burton Levos, who conducted the investigation into the murder of Nobles. Detective Levos testified about two separate interviews with McKenna. The first was on January 6, 1979, the day of the murder. Detective Levos testified he had given McKenna a *Miranda* warning and had him sign a card acknowledging his rights. The prosecutor asked Detective Levos whether he had then conducted a short interview with McKenna. Detective Levos responded:

> Yes. I asked him whether he could tell me about the death of J. Nobles. He said, "I don't want to talk about it. I don't want to implicate anybody and I won't give you a written statement."

The second interview took place on January 8, 1979, two days after McKenna was arrested for the murder. The interview was initiated by a letter from McKenna to Detective Levos, stating that he wanted to make a deal. Detective Levos testified that he asked McKenna "Are you involved in the case of the jail in reference to Nobles's murder"? He further testified that when this question was put to McKenna, McKenna looked at him, nodded yes, and smiled. On direct appeal, McKenna argued that the response at the January 8 interview was privileged as a plea negotiation. He does not renew that argument here.

McKenna's current argument relates solely to the first interview on January 6 and a claim that the testimony elicited on that date constituted *Doyle* error. The precise issue presented in *Doyle* was whether a prosecutor could use a defendant's post-arrest silence to impeach the defendant's exculpatory testimony. 426 U.S. at 616, 96 S.Ct. at 2243–44. The Court held that in light of *Miranda*'s explicit recognition that one has a constitutional right to remain silent, the prosecutor could not use the defendant's decision to

exercise that right as a tool of impeachment. *Id.* at 617, 96 S.Ct. at 2244. McKenna argues that the state violated *Doyle* when the prosecutor elicited Levos's testimony concerning McKenna's response at the January 6 interview. McKenna further contends that it was error when the prosecutor, in his closing argument, commented on this testimony, stating:

> He [Levos] advised Mr. McKenna of his Constitutional rights and they then had a short interview and Mr. McKenna suggested he had information but he didn't want to talk about who killed Nobles. In fact, he said he didn't want to give any kind of written statement.

Because no objection or motion to strike was made either to the testimony or the closing argument, we review for plain error. The testimony of Detective Levos and the prosecutor's comment thereon do not constitute *Doyle* error. McKenna did not remain silent. More importantly, there is nothing in his response on January 6 that indicates any sort of admission of guilt. Instead, it indicates a desire not to implicate someone else. Thus, even if it were error it was harmless beyond a reasonable doubt.

### 2. Penalty Phase

McKenna alleges that the prosecution made an intentional and prejudicial misstatement of the law in summation to the jury during the penalty phase of the trial. Because we hold that McKenna must be resentenced either by the court or at a new penalty hearing, any error that may have occurred will not be of consequence.

### C. Refusal to Grant a New Trial

██ Five months after McKenna's conviction and sentence, attorney Ken McKenna obtained a handwritten statement from Rossi, who was then incarcerated in Idaho, recanting his testimony and contending that he was pressured into giving it. The trial court heard argument and then denied the motion. In evaluating Rossi's recantation, a court obviously considers the strength of that assertion in light of the impeachment that would result from any such testimony. In this case, the impeaching evidence would be very

strong. Rossi would had to have committed perjury on three separate occasions: the preliminary hearing, the first trial, and the second trial. In light of this history, it is questionable what Rossi's testimony might actually be when the time came down to a new trial. Furthermore, the other evidence of McKenna's guilt was very strong. Under the *Brecht* standard, the denial of the new trial was not error and did not result in prejudice to McKenna.

### D. Ineffective Assistance of Counsel

██ McKenna argues that he received ineffective assistance of counsel at trial and on his direct appeal, thus, violating his Sixth Amendment right to a fair trial. In analyzing an ineffective assistance of counsel claim, our overriding concern is to determine whether counsel's conduct so undermined the functioning of the adversary process that the trial cannot be relied upon as having produced a just result. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. at 2064. Review of counsel's performance is highly deferential, and we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065.

### 1. Assistance of Trial Counsel

McKenna argues that the State interfered with his counsel's ability to assist him at trial by effectively driving away the only experi-

enced member of the defense team when the county failed to advance expenses to attorney Kent Robison. He contends that this left him with only the assistance of his inexperienced brother, attorney Ken McKenna, and another slightly more experienced attorney, Bruce Beesley.

McKenna had initially requested that his brother be appointed to represent him. His brother sought the assistance of Kent Robison, a more seasoned defense attorney, to perform as co-counsel. The trial court appointed Ken McKenna and Robison to perform as co-counsel. On the second day of *voir dire,* Robison was informed that the county would not make cash advances for travel and lodging. Robison, claiming financial hardship to his law firm, sought and was granted withdrawal from the case. Robison later sent Bruce Beesley, an associate from his firm, to assist McKenna at trial. Ken McKenna was left for three days as the only attorney for the defense.

The Nevada Supreme Court found that "counsel withdrew not because the county denied him compensation, but merely because the county declined to compensate him in advance." In seeking to withdraw from representing a client charged with murder after the trial has started because the county would not advance his expenses, attorney Robison has demonstrated ethical standards that fall far short of responsible professional conduct. It is also difficult to understand why a state trial court would grant such a request when the result was to leave McKenna's defense in the hands of inexperienced counsel. Our inquiry, however, is to determine whether the performance of the remaining counsel was constitutionally deficient and prejudicial.

 McKenna asserts that the County's refusal to advance costs constitutes state interference with counsel that creates a mandatory presumption of prejudice. McKenna relies on the following statement from *Strickland:* "Actual or constructive denial of assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance." 466 U.S. at 692, 104 S.Ct. at 2067 (citing *United States v. Cronic,* 466 U.S. 648,

659, n. 25, 104 S.Ct. 2039, 2047, n. 25, 80 L.Ed.2d 657 (1983)). In *Cronic,* the Court described the type of situation from which prejudice is presumed. When counsel is totally absent, is prevented from assisting the accused at a critical stage of the proceeding, or when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, we will presume prejudice. *Cronic,* 466 U.S. at 659 & n. 25, 104 S.Ct. at 2047 & n. 25.

None of these situations apply here. Counsel was never totally absent or absent at a critical stage. McKenna was at all times represented by counsel. One of McKenna's counsel, Kent Robison, chose to withdraw because he was not satisfied with the financial arrangements. The remaining counsel were not prevented from assisting McKenna, nor were they interfered with in any way.

These attorneys, though inexperienced, did have the advantage of being able to review a complete prior trial record, where experienced trial counsel represented McKenna. The question is whether the representation given by these attorneys was deficient and whether any deficiencies in performance were prejudicial.

### (a) *Failure to File a Notice of Alibi*

 At trial, counsel sought to call inmate Frank DePalma as a defense witness. DePalma was expected to testify that the victim had violent propensities and, on the night of the murder, he saw McKenna locked in a different cell than the one where the victim was found. The trial court refused to allow DePalma to testify, stating that he was an alibi witness and counsel had not filed a notice of alibi ten days prior to trial as required by NRS 174.087. The record shows that the required notice would had to have been filed during the time Kent Robison was still participating as co-counsel. All three defense attorneys were questioned as to why a notice of alibi witness was not filed. Both Robison and Beesley were unaware of the existence of a potential alibi witness. Attorney McKenna stated that he was aware of the witness but was unaware of the procedural advance notice requirement.

Assuming that the failure to file the advance notice of an alibi witness was deficient performance, we conclude that this failure "was not so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. On the evening of January 5, 1979, McKenna was housed in cell 4A2 with Rossi, Denson, and Nobles. The next day, January 6, at 7:25 a.m., the body of Nobles was discovered in cell 4A2. The cause of death was asphyxia from ligature strangulation. The estimated time of death was between the late evening hours of January 5 and the early morning of January 6.

Two eye witnesses, Rossi and Jones, not only saw McKenna in cell 4A2, but witnessed the murder. Cellmate Denson testified that the next morning, before prison officials had discovered that Nobles was dead, McKenna asked him to pass a homemade knife wrapped with fabric ligature to Harris, another inmate; Harris testified that he received this weapon.

In light of this overwhelming evidence and McKenna's own adoptive admission, we conclude that DePalma's expected testimony that he had seen McKenna playing poker in another cell would not have been given credence or affected the verdict.

### (b) *Failure to Object to Levos's Testimony*

McKenna contends that counsel was ineffective in failing to object to Detective Levos's testimony concerning his first interview with McKenna because the testimony constituted *Doyle* error. As we earlier discussed in section IIB1, this testimony did not constitute *Doyle* error and was not prejudicial and, thus, this claim is unavailing.

### (c) *Failure to Accomplish the Admission of Toxicology Report.*

■ In questioning the medical examiner, counsel did not seek admission into evidence of a toxicology report showing that the victim had morphine in his bloodstream at the time of his death. McKenna argues that this evidence would have lessened sympathy for the victim. We conclude that this does not constitute deficient performance nor prejudice under the *Strickland* standard.

### (d) *Failure to Perfect Appeal From Order Denying New Trial.*

Defense counsel did not perfect its appeal from the order denying a new trial based on Rossi's recantation of his testimony. First, we note that there was no prejudice from the failure to appeal because it was fully considered by the Nevada Supreme Court on the habeas petition. Furthermore, as we concluded in section IIC, the denial of a new trial was not constitutional error.

### 2. *Assistance of Appellate Counsel*

■ McKenna contends that the brief on direct appeal was prepared by a law clerk with inadequate supervision or review by appellate counsel. The issue is not how the brief was prepared, but the adequacy of the brief. McKenna has failed to identify any deficiencies that could have affected the outcome of the appeal. This does not constitute ineffective assistance of counsel.

### III. *CONCLUSION*

We affirm the district court's denial of McKenna's petition for a writ of habeas corpus as to his conviction of first-degree murder. We also affirm the district court's decision to grant the petition as to his sentence of death unless he is resentenced within a reasonable period of time. The wording of the order requires clarification so as to specify that the writ is not granted at this time but will be granted if McKenna is not resentenced. The judgment of the district court is **AFFIRMED,** and the case is **REMANDED** to the district court for entry of a modified order stating that a writ of habeas corpus will be issued with regard to McKenna's sentence unless he is resentenced within a reasonable period of time.