Robert Douglas SMITH, Petitioner–Appellant,

v.

Terry STEWART, Director, Arizona Department of Corrections, Respondent–Appellee.

Nos. 96–99025, 96–99026.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 17, 2000

Filed March 6, 2001

S. Jonathan Young, Tucson, Arizona;
John F. Palumbo, Law Offices Pima Coun-
ty Public Defender, Tucson, Arizona, for
the petitioner-appellant.

Scott Bales, Solicitor General, Phoenix, Arizona, for the respondent-appellee.

Before: FERGUSON, REINHARDT, DAVID R. THOMPSON, Circuit Judges.

FERGUSON, Circuit Judge:

Robert Douglas Smith ("Smith") appeals from the district court's dismissal of his habeas corpus petition on the ground of procedural default. He claims that his trial counsel failed to investigate his mental condition or to present adequate mitigating testimony during the sentencing phase of his trial, despite clear indications at the time of the presence of a mental disorder. We reverse the district court's ruling that federal habeas review is barred. Because Smith has made a colorable claim to relief, we order an evidentiary hearing in the district court.

### I.

In March of 1982, Smith and accomplice Joe Leonard Lambright were convicted of sexual assault, kidnaping, and first-degree murder.[1] The principal witness against them at trial was another accomplice, Kathy Foreman ("Foreman"), who exchanged her testimony on the Government's behalf for freedom from prosecution.

After the guilt phase of Smith's trial, the prosecution sought the death penalty on the theory that the murder had been committed in an especially heinous, cruel, or depraved manner under Ariz.Rev.Stat. Ann. § 13–703(F)(6). The government called Smith's former cell-mate to the stand who, in seeking to reduce his own sentence, had told a criminal investigator that Smith laughed while fully confessing to the crime. When the government next called the investigator to testify about the conversation, she confirmed that Smith had described the crime to his cell-mate in

exceptional detail, showed no remorse, and snickered throughout. In addition to presenting testimonial evidence, the prosecution displayed photographs of how the crime scene looked at night and during the day so that the court could fully grasp the victim's terror before she died.

Smith's counsel took less than a day to present the mitigating evidence he had gathered in support of sparing his client's life. Despite obvious indications that his client suffered from a mental disorder, the lawyer neither obtained nor presented any evidence of his psychiatric history and continuing mental impairment. He also failed to collect or present records relating to Smith's horrific childhood. Instead, his evidence consisted entirely of the testimony of Smith's mother-in-law and two sisters. Each witness was brief. Each offered only a general characterization of Smith as a nice and generous person who, along with his sisters, had grown up in an unstable household.

In closing argument, Smith's lawyer offered the court some reasons not to impose the death penalty. He opened by saying, "[f]irst of all, the most mitigating factor in the case is the fact that Kathy Foreman wasn't prosecuted at all." He made passing reference to Smith's "abusive childhood." Apparently believing that evidence of Smith's mental disorder might constitute a justification for the death penalty, the lawyer asserted:

> I'm told today by Jim Meyers there is a report from the hospital in Houston, which I haven't seen yet. . . . The reports I have are that he has problems with depression. He is a person of average intelligence. I don't know, and I'm making the statements on the reports I have seen so far, I would suggest that he doesn't have any major personality disorders and that he is not the type of person that needs to be, quote, eliminated.

---

1. Because the facts of the offense are set forth in our en banc opinion, we do not repeat them here. *See Lambright v. Stewart*, 191 F.3d 1181, 1182–83 (9th Cir.1999) (en banc).

Next, he asked the court to consider the *victim's family's* "great loss" in deciding Smith's punishment. He returned again to the government's failure to prosecute Foreman, spoke abstractly of his personal opposition to the death penalty, and promptly closed by saying, "[f]inally, again, I question how the Court could agree with the government, which is asking for the death penalty for Robert Smith, when it was the same government agency that chose to let Kat Foreman go without any prosecution at all. . . . I don't think that's justice."

The state trial judge sentenced Smith to death. He rejected the lawyer's argument that Foreman's treatment at the government's hands warranted a lesser sentence for Smith because he did not "believe that any of the ramifications of her grant of immunity have diminished the moral, legal or ethical culpability or responsibility of either Mr. Smith or Mr. Lambright by any degree whatsoever." He justified his decision to impose death by stressing that, "I have, in fact, searched the record, the file, the pre-sentence report, my trial notes and recollections for any and all other factors which might conceivably mitigate your culpability for offenses of kidnaping and sexual assault and found none."

## II.

The same office that represented Smith at trial continued to represent him unsuccessfully on appeal and in post-conviction proceedings. On direct appeal, the Arizona Supreme Court affirmed both Smith's conviction and sentence. *See State v. Smith,* 138 Ariz. 79, 673 P.2d 17 (Ariz. 1983). Smith's counsel then filed a series of state and federal post-conviction petitions, none of which included an ineffective assistance of counsel claim, and all of which were denied.

After exhausting available state remedies, Smith's lawyer filed an amended federal petition for writ of habeas corpus. Soon after, District Judge Bilby received a letter from Smith himself, complaining that he had instructed his lawyer to raise a claim of ineffective assistance of counsel,

but that his lawyer had failed to do so. In the letter, Smith wrote:

My attorney says he can't rais [sic] or file the issue of enafective [sic] assisdants [sic] of countsaling [sic] cause he is empoleed [sic] by the same office as the attorney that handeled [sic] my trial. I'm under the inpresstion [sic] from him that if all the issue [sic] is denied, that I could then get the courts to apoint [sic] me another attorney to file this issue for me, IS THIS TRUE? To my understandig [sic] from everyone I've ask [sic], wrote [sic] to tells [sic] me diffrant [sic] things. I've written Denise Young and ask [sic] her about this, it took her a long time to respond cause she's so bissy [sic] and still did'nt [sic] answer my qustions [sic]. Sorry to have to bother you with this but I feel this is a very inportant [sic] issue, Is'nt [sic] it also true that all issues has [sic] to be rased [sic] and filed at one time acording [sic] to the new apeals [sic] law passed a cuppall [sic] of year [sic] ago? I would like this court to know that I want this issue inclouded [sic] in my apeals [sic]. I would like to take this to [sic] time to respectfuly [sic] ask this Honorable Court to apoint [sic] me a FEDERAL ATTORNEY to work with my attorney Mr. John F. Palumbo at the PIMA COUNTY PUBLIC DEFENDERS OFFICE TUCSON AZ. if this is possible, if not, please apoint [sic] me new Federal Appeal [sic] ATTORNEYS. THANK YOU! very much for your concederation [sic], time and help with this matter.

Smith's counsel confirmed in an affidavit to the court that the claim had not been raised because his employer, a state agency, prohibited its lawyers from attacking each other's performance as a matter of policy.

In response to Smith's letter, the district court appointed a lawyer in private practice to litigate his claim of ineffective assistance of trial counsel. Smith then filed a state post-conviction petition alleging for the first time several instances of ineffective assistance at trial and sentencing, which the court dismissed as procedurally

barred. The federal district court also refused to adjudicate Smith's ineffective assistance of counsel claim on the ground that "the [state] trial court found the claims precluded as a matter of state law."

## III.

■ We review de novo a district court's decision to deny a petition for writ of habeas corpus. *See Mayfield v. Calderon*, 229 F.3d 895, 2000 WL 1514610, at * 4 (9th Cir. October 13, 2000).

## IV.

Smith raised an ineffective assistance of counsel claim for the first time in his third state post-conviction petition. The state court dismissed the claim in October of 1995. Two months later, the state court revisited Smith's claim in an order denying his motion for reconsideration. In the order, the court wrote:

> Counsel's assertion on page 4, line 3 through 6 of his Motion for Rehearing, that "each of the deputies of the Public Defender's Office have been appointed ... to 'conduct the affairs' of the Pima County Public Defender's Office rather than to independently represent Mr. Smith" is either outrageous or ridiculous, whichever adjective is most appropriate. Deputies in the Public Defender's Office do not represent the Public Defender's Office. They are attorneys for and have an attorney-client relationship with the actual defendant charged with the crime. It may, indeed, be correct that it would be inappropriate for a public defender to allege a different public defender was ineffective at trial (although it has been done by this Public Defender's Office in the past). However, this does not absolve an attorney representing a client in an appellate

matter from ineffective assistance of counsel. That is an absolute and undelegable duty. Failure to do so is at the very best malpractice and malfeasance. An attorney who discovers a colorable claim of ineffective assistance of counsel must immediately withdraw, notify the Court that there is such a claim, and allow the Court to appoint an attorney who has no conflict in representing that client. To suggest that one could wait for ten years, from 1985 to the present, and never even examine the case to see if the client had such a claim is an admission of the grossest malpractice. It is HEREBY ORDERED Defendant's Motion for Rehearing is denied.

The claims are so old they are (1) precluded by failure to bring them previously, in accordance with Rule 32.2(a) and/or (2) for those claims raised under Rules 32.1(e), 32.1(f) or 32.1(g), are summarily dismissed due to the petition's failure to set forth the reason for not raising such claims in a previous petition or in a timely manner, in accordance with Rule 32.2(b).

■ We must determine whether the state court judgment in Smith's case bars federal review of his Sixth Amendment claim. *See Coleman v. Thompson*, 501 U.S. 722, 736, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A state court's procedural ruling will bar our review only if its basis is separate and distinct from the federal question. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *see also Coleman*, 501 U.S. at 729–30, 111 S.Ct. 2546.[2] The State contends that the Arizona court's procedural default ruling in this case constitutes an independent state ground that bars us from reviewing Smith's ineffectiveness claim.[3]

---

**2.** To bar our review, a state's procedural default rule must also be adequate, which means that it is "strictly or regularly" followed. *See Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988); *see also Hathorn v. Lovorn*, 457 U.S. 255, 263, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982). We have held that Arizona's proce-

dural default rule is regularly followed in several cases. *See, e.g., Ortiz v. Stewart*, 149 F.3d 923, 931–32 (9th Cir.1998); *Poland v. Stewart*, 117 F.3d 1094, 1106 (9th Cir.1997).

**3.** "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate

In *Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court held that when a state's procedural default rule depends on an assessment of a federal claim, federal review is not barred. The state court in that case explicitly held that Ake had waived his federal constitutional claim by omitting it from his motion for a new trial. *Id.* at 74, 105 S.Ct. 1087. That court had ruled in another state case, however, that the waiver rule did not apply in cases of fundamental trial error. *Id.* By creating such an exception, "the State has made application of the procedural bar depend on an antecedent ruling on federal law, that is, on the determination of whether federal constitutional error has been committed." The Supreme Court concluded that because "resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded." *Id.* at 75, 105 S.Ct. 1087.

We have similarly held that federal habeas review is not barred when a state makes the application of its default rule depend on a consideration of federal law. *See, e.g., Park v. California,* 202 F.3d 1146 (9th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 277, 148 L.Ed.2d 202 (2000); *McKenna v. McDaniel,* 65 F.3d 1483 (9th Cir.1995); *Russell v. Rolfs,* 893 F.2d 1033, 1035–36 (9th Cir.1990). In *Park,* 202 F.3d at 1149, the state court refused to consider the petitioner's federal constitutional claim because he had failed to raise it on direct appeal. Despite the state court's explicit reliance on procedural default in its ruling, we held that Park's federal claim was cognizable in federal habeas corpus proceedings because the California Supreme Court had held in another case that a petitioner could overcome the procedural bar if he could show a violation of "fundamental constitutional rights." *Id.* at 1152. As we explained, "in light of [the California Supreme Court's] acknowledgment that the constitutional error exception encompassed consideration by the court of the merits of federal constitutional questions, the California Supreme Court necessarily made an antecedent ruling on federal law before applying the [procedural] bar to any federal constitutional claims raised in Park's state habeas petition." *Id.* at 1153.

We also held in *McKenna v. McDaniel,* 65 F.3d at 1489, that a state court judgment explicitly invoking Nevada's procedural default rule as the basis for dismissing a post-conviction petition did not preclude federal review because the state court had explained in another case that it enjoyed the discretion to address errors of "constitutional dimension." We concluded that the existence of a discretionary exception in cases of constitutional dimension rendered the court's state-law procedural ruling "necessarily intertwined with its analysis of the merits of McKenna's constitutional claims and does not constitute a clear statement of independent and adequate state grounds for the decision." *Id.* at 1489.

It is unclear from the order denying rehearing of Smith's ineffective assistance of counsel claim whether the court invoked a procedural bar as the basis of its ruling.

---

state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. Because we conclude that the state court's ruling did not rest on an independent state ground, we do not address Smith's argument that the policy preventing employees from attacking the competency of any of the agency's lawyers

constitutes cause because it was an "objective factor" that was "external" to the petitioner and that "cannot fairly be attributed to him." *Id.,* 501 U.S. at 753, 111 S.Ct. 2546. We note however, that his argument appears to have merit under our recent decision in *Manning v. Foster,* 224 F.3d 1129, 1134 (9th Cir.2000), where we held that "a conflict of interest, independent of a claim of ineffective assistance of counsel ... constitute[s] cause where the conflict caused the attorney to interfere with the petitioner's right to pursue his habeas claim."

The court suggested that Smith's lawyer would have raised an ineffective assistance of counsel claim if Smith had a colorable one. In other words, the court implied that the record failed to demonstrate that Smith had a colorable claim of ineffective assistance of counsel. Such a holding does not satisfy the requirement that a state court clearly and explicitly invoke a state procedural rule to bar federal habeas review.

Moreover, it is clear that at the time of the state's procedural ruling, Arizona courts were required to consider the merits of a claim. Ariz. R.Crim. Pro. 32.2(a) generally bars a defendant from obtaining relief from his conviction on a ground that he waived at trial, on appeal, or in any previous collateral proceeding.[4] At the time of the state court's procedural ruling, however, Arizona courts were required to examine the nature of a claim to determine whether the state's procedural default rule applied. *See State v. Curtis*, 185 Ariz. 112, 912 P.2d 1341, 1344 (Ct.App.1995); *see also State v. French*, 198 Ariz. 119, 7 P.3d 128, 130 (Ct.App.2000). Under Arizona's procedural default rule, "[a] claim is precluded that could have been, but was not,

raised in a prior appeal or PCR, unless the asserted claim is of sufficient constitutional magnitude." *Curtis*, 912 P.2d at 1344 (internal quotation marks omitted).[5] Thus, Rule 32.2's procedural default rule applies where a petitioner's "belated focus" on an alleged error "lacks sufficient constitutional magnitude to revive an issue." *Id.* at 1344.[6]

Given Arizona's exception for errors of "constitutional magnitude," the state court's finding of procedural default in Smith's case necessarily included an evaluation of the strength of his federal claim. Indeed, like the procedural rulings in *Ake, Park,* and *McKenna,* the state court's procedural ruling in this case was necessarily intertwined with its implicit determination that the merits of his claim were of insufficient constitutional magnitude. Thus, federal review is not barred.

## V.

■■■ Smith contends that he is entitled to an evidentiary hearing to develop his ineffective assistance of counsel claim. "In a capital case, a habeas petitioner who asserts a colorable claim to relief, and who

---

**4.** Since 1992, Rule 32.2 provides, in pertinent part:

> a. Preclusion. A defendant shall be precluded from relief under this rule based upon any ground:
> (1) Still raisable on direct appeal under Rule 31 or on post-trial motion under Rule 24;
> (2) Finally adjudicated on the merits on appeal or in any previous collateral proceeding;
> (3) That has been waived at trial, on appeal, or in any previous collateral proceeding.

**5.** Arizona's exception for overcoming procedural default in cases of constitutional dimension or egregiousness remains in effect. *See French*, 7 P.3d at 131 (applying the procedural default rule to petitioner's ineffectiveness claim because "[n]one of these omissions constitutes ineffectiveness so egregious and of such constitutional dimensions that it may not be precluded")

**6.** The Arizona Supreme Court's 1992 comment to Rule 32.2(a)(3) makes clear that the application of the amended procedural de-

fault rule requires a separate examination of a claim's constitutional magnitude. The comment provides, in pertinent part, that "[i]f an asserted claim is of sufficient constitutional magnitude, the state must show that the defendant 'knowingly, voluntarily and intelligently' waived the claim." Ariz. R.Crim. Pro. 32.2(a)(3) comment (West 2000). Thus, since 1992, Arizona's procedural default rule applies in two circumstances: first, when a claim is of insufficient constitutional magnitude and was forfeited at trial, on appeal, or in any previous proceeding; second, when a claim is of sufficient constitutional magnitude and the State proves that the person seeking relief knowingly, voluntarily, and intelligently waived it at trial, on appeal, or in any previous proceeding. In both cases, the state court must consider the nature of the claim before finding that the petitioner procedurally defaulted it. Because an Arizona procedural ruling in this context necessarily includes an evaluation of the constitutional stature of the claim, it does not rest on an independent state ground.

has never been given the opportunity to develop a factual record on that claim, is entitled to an evidentiary hearing in federal court." *Siripongs v. Calderon*, 35 F.3d 1308, 1310 (9th Cir.1994).[7] No court has given Smith an opportunity to develop a factual record on his Sixth Amendment claim.

 To establish that his counsel was ineffective at sentencing, Smith must satisfy the standard the Supreme Court announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, he must show that his counsel's performance was deficient; that is, that it was "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052. Although there is a strong presumption that an attorney's conduct meets the standard for effectiveness, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052. In addition to demonstrating counsel's deficient performance, a petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," where a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052; *see also Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1511–12, 146 L.Ed.2d 389 (2000).

 "It is imperative that all relevant mitigating information be unearthed for consideration at the capital sentencing phase." *Caro v. Calderon*, 165 F.3d 1223,

1227 (9th Cir.1999), *cert. denied*, 527 U.S. 1049, 119 S.Ct. 2414, 144 L.Ed.2d 811 (1999). As the Supreme Court recently made clear, counsel's failure to investigate and present evidence of a person's mental impairment and social history constitutes deficient performance. *See Williams*, 120 S.Ct. at 1513–15 (concluding that counsel was deficient in failing to conduct an investigation that would have uncovered records describing a "nightmarish childhood" and borderline mental retardation); *see also Smith v. Stewart*, 189 F.3d 1004, 1008–09 (9th Cir.1999), *cert. denied*, —— U.S. ——, 121 S.Ct. 358, 148 L.Ed.2d 288 (2000) (No. 00–110); *Caro*, 165 F.3d at 1225; *Bean v. Calderon*, 163 F.3d 1073, 1080–81 (9th Cir. 1998), *cert. denied*, 528 U.S. 922, 120 S.Ct. 285, 145 L.Ed.2d 239 (1999); *Correll v. Stewart*, 137 F.3d 1404, 1412 (9th Cir. 1998), *cert. denied*, 525 U.S. 996, 119 S.Ct. 465, 142 L.Ed.2d 418 (1998).

There can be no doubt that Smith has asserted a colorable claim to relief entitling him to an evidentiary hearing. Smith alleges that his lawyer failed to investigate, let alone present evidence of, his miserable childhood, mental disabilities, and mental impairment at the time of the offense. The thin transcript of Smith's sentencing hearing reveals that his lawyer offered only the brief testimony of three lay witnesses who gave merely a vague description of his personality and childhood. When the time came to argue to the court that Smith's life was worth sparing, his lawyer asserted that the best mitigating factor in the case was Foreman's immunity agreement. Inexplicably, he also suggested that the court consider "how

---

7. In *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 8–9, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), the Supreme Court held that petitioners must show cause and prejudice for failing to develop the material facts relating to a claim of ineffective assistance of counsel in state court. In his third Rule 32 petition, Smith attempted to develop the theory that his counsel provided ineffective assistance at sentencing. The court refused, however, to appoint a psychological expert to assist Smith in developing his argument. Despite Smith's attempt to have the court "consider his allegations of

ineffective assistance," the court dismissed the claims without a hearing. Under these circumstances, Smith has satisfied the cause prong of *Tamayo–Reyes*. *See Jones v. Wood*, 114 F.3d 1002, 1012 (9th Cir.1997). The prejudice prong of *Tamayo–Reyes* is "coextensive with the prejudice prong of *Strickland*." *Correll*, 137 F.3d at 1414. For the reasons set forth below, we find that Smith has made a colorable claim of prejudice, and is therefore entitled to an evidentiary hearing on this question.

Sandra Owen's [the victim] family has sustained a great loss" in deciding whether Smith deserved to be put to death. The lawyer then offered a rambling explanation of his moral opposition to the death penalty and promptly returned to the State's failure to prosecute Foreman. This was a woefully inadequate presentation in support of saving Smith from a sentence of death.

If Smith's allegations are true, his counsel's failure to conduct any investigation is particularly egregious in light of indications at the time of trial of the presence of a mental disability. We have explained that, "where counsel is on notice that his client may be mentally impaired, counsel's failure to investigate his client's mental condition as a mitigating factor in a penalty phase hearing, without a supporting strategic reason, constitutes deficient performance." *Hendricks v. Calderon*, 70 F.3d 1032, 1043 (9th Cir.1995); *see also Smith v. Stewart*, 140 F.3d 1263, 1269 (9th Cir.1998) (concluding that counsel was deficient for failing to "perform any real investigation into mitigating circumstances, even though that evidence was rather near the surface"), *cert. denied*, 525 U.S. 929, 119 S.Ct. 336, 142 L.Ed.2d 277 (1998). This appears to be the case here. In a report assessing Smith's competency to stand trial, for example, Dr. Martin Levy noted that he had been hospitalized in a psychiatric unit and opined that, "Mr. Smith does have a history of psychiatric difficulties. Those difficulties have been primarily depressive in nature and have involved suicide attempts." Another report examining Smith's competency described him as "significantly anxious and depressed" and recommended further psychiatric evaluation.

The presentence report similarly signaled that Smith might have a mental disability. It noted that, as a child, Smith suffered from polio, a disease which can cause brain damage, and later underwent psychiatric treatment at a youth community mental health agency. It described Smith's numerous attempts to run away from his family beginning at age nine and his history of impulsive behavior. The report also revealed that Smith had used broken glass to cut through his skin and slash his veins in just one of several attempts to end his life. On another occasion, he shot himself in the stomach. Eventually, Smith began to abuse drugs, including LSD, marijuana, cocaine, psilocybin, heroin, PCP, and amphetamines. In conclusion, the report urged the court that, "[m]ental health counseling should be made available in the prison setting, keeping in mind that the defendant seems to be a high suicide risk." Rather than pursue an investigation, Smith's lawyers allegedly failed to develop any of this evidence, and in fact failed to either present argument relating to it or connecting it to any of Arizona's enumerated mitigating factors. We have previously found that the failure to present any argument based on a presentence report remarkably similar to the one in this case constituted deficient performance. *Smith*, 140 F.3d at 1269.

Smith alleges that his counsel would have uncovered substantial mitigating evidence if he had conducted an investigation. Smith has an IQ of 71, which is in the range of mental retardation. In a report prepared just two years after trial, moreover, Dr. David Gurland wrote that, "[i]n reviewing the data with regards to Mr. Smith, it becomes obvious that this is a man who is a marginally functioning individual who has been ever since his childhood." He noted that Smith was raised in a broken home and suffered both psychological and physical abuse. In commenting on his withdrawal from school in the eighth grade, Dr. Gurland wrote that, "[i]t is hard to know just how he managed to stay in school as long as he did." Smith's low I.Q. makes him "more of a follower than a leader. He is also easily influenced by others whom he may feel like him or admire him or want to be with him." Dr. Gurland concluded that the "patient should not, under the law, be given the death penalty as I think there are enough mitigating circumstances to, at worst, give him a life sentence." In addition to presenting

evidence that he suffered from a mental disorder, Smith also recounted to the district court that four inmates in a county jail took turns gang raping him when he was just eighteen years old. Smith's lawyer presented none of this powerful and potentially life-saving evidence at sentencing.

Apart from allegedly failing to conduct any investigation into Smith's social and mental history, it appears from the transcript that his lawyer also failed to research the law on capital sentencing. In Arizona, a psychological disorder is a specifically enumerated mitigating circumstance. Ariz.Rev.Stat. § 13–703(G)(1). But when a report hinting at a possible mental impairment surfaced, Smith's lawyer minimized his client's mental disability and told the court, "I would suggest that he doesn't have any major personality disorders and that he is not the type of person that needs to be, quote, eliminated." It appears from this assertion that Smith's lawyer not only failed to recognize that a mental impairment could be mitigating, but also argued against his client's interests under the mistaken belief that the presence of a mental disorder was an aggravating factor. A misapprehension of the law that leads a lawyer to argue against his client's interests during the sentencing phase of a capital trial constitutes an "inadequac[y] in rudimentary trial preparation and presentation" that falls outside the range of competent assistance. *Bean*, 163 F.3d at 1080; *see also Huynh v. King*, 95 F.3d 1052 (1996); *Scarpa v. DuBois*, 38 F.3d 1 (1st Cir.1994); *Morris v. California*, 966 F.2d 448, 454–55 (9th Cir. 1991); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir.1987). In short, Smith has presented a colorable claim of counsel's deficient performance.

Smith has, moreover, made a "colorable claim" that his counsel's deficient performance prejudiced him. The Supreme Court recently held that an attorney's failure to conduct an investigation into a petitioner's abusive childhood, borderline mental retardation, and prison record satisfied *Strickland*'s prejudice prong. *See Williams*, 120 S.Ct. at 1515. This was because, as the Court explained, "[m]itigating evidence unrelated to dangerousness may alter the jury's selection of penalty, even if it does not undermine or rebut the prosecution's death-eligibility case." *Id.* at 1516; *see also Smith*, 189 F.3d at 1013 ("We previously have found Strickland's prejudice prong met where we concluded that defense counsel effectively presented no mitigating evidence at sentence, despite the presence of aggravating factors."); *Correll*, 137 F.3d at 1413 ("[B]ecause trial counsel failed to present any evidence of Correll's purported mental illness which may have satisfied Ariz. Rev. St. § 13–703(E), Correll has 'undermined confidence in the outcome' of the sentencing, thereby establishing the requisite Strickland prejudice.") (quoting *Strickland*, 466 U.S. at 694–95, 104 S.Ct. 2052). Prejudice is especially likely where, as here, "this is not a case in which a death sentence was inevitable because of the enormity of the aggravating circumstances." *Bean* 163 F.3d at 1081; *see also Clabourne v. Lewis*, 64 F.3d 1373, 1387 (9th Cir.1995). In this case, the prosecution argued that only one aggravating factor existed. In response, Smith's lawyer not only allegedly failed to investigate his horrific childhood, mental retardation and possible brain damage, but also failed to do basic legal research. Smith has not only presented abundant evidence of deficient performance, but also of prejudice. There can be no question that he has satisfied the standard for obtaining an evidentiary hearing.

## VI.

We reverse the judgment of the district court and remand for an evidentiary hearing. We remand so that the district court can determine whether Smith's allegations that his attorney neither investigated his mental condition nor presented adequate mitigating psychiatric testimony during the sentencing phase are true and, if so,

whether he was denied effective assistance of counsel.

Concurrently herewith we file a memorandum disposition in which we affirm the petitioner's conviction and the district court's ruling that the especially heinous, atrocious, and cruel aggravating factor applies in this case for the reasons stated therein. Accordingly, the judgment below is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED for further proceedings consistent with this opinion.